Defendant-appellant Richard Hood ("appellant") appeals from his conviction for murder.
Appellant assigns the following errors for review:
 I. TRIAL COURT ERRED IN DENYING APPELLANT'S CRIMINAL RULE 29 MOTION WHERE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CONVICTION.
 II. TRIAL COURT ERRED IN ADMITTING TESTIMONY OF WITNESSES WHOSE IDENTITY WAS NOT TIMELY DISCLOSED TO DEFENSE COUNSEL.
 III. TRIAL COURT ERRED IN ADMITTING TESTIMONY IN VIOLATION OF EVIDENCE RULES 404 (B) AND 403 (A)
 IV. THE MURDER CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 V. PROSECUTORIAL MISCONDUCT DENIED APPELLANT'S CONSTITUTIONAL RIGHT TO A FAIR TRIAL.
Finding the appeal to lack merit, the judgment of the trial court is affirmed.
 I.
On or about December 22, 1994, the grand jury indicted appellant for aggravated murder in the 1988 death of Avis Robinson. On January 27, 1995, appellant entered a plea of not guilty. On April 5, 1995, the trial court granted the prosecution's motion to reduce the charge in the indictment to murder. The case proceeded to trial by jury.
Cleveland Police Officer Jon Qualey testified that on May 13, 1988, he responded to a report of a body found in a vacant apartment on East 125th Street in Cleveland. Officer Qualey entered the apartment and discovered the body of thirty-one year old Avis Robinson in a small closet. The body was in a fetal position and clothed in a blouse and one boot. A pair of pants was tied tightly around the victim's neck.
The coroner examined the body that afternoon and determined that Robinson died twelve to eighteen hours beforehand. Robinson suffered a number of recent scrapes and bruises, all of which were inflicted at the same time. Robinson died from ligature strangulation. The death was ruled a homicide.
Carleen Keeper testified that in 1988, she and appellant were romantically involved. Keeper was aware that appellant had a contemporaneous liaison with Alfreda Davis. On May 12, 1988, appellant appeared at Keeper's apartment in the company of Avis Robinson at approximately 9:30 p.m. Both appeared to be intoxicated. Keeper eventually left to attempt, ultimately, unsuccessfully, to procure some cocaine for Robinson. Upon her return to the apartment, Keeper discovered appellant and Robinson engaged in sexual intercourse in the bathroom. After appellant closed the bathroom door, Keeper retrieved appellant's gun and pointed the weapon at appellant and Robinson. The couple stopped their activity and all three went to sit in the living room. Robinson soon departed while Keeper and appellant were busy arguing. Keeper called the Saru Lounge to tell George Blackwell, appellant's employer, about the incident. Then, Keeper told appellant to leave and watched appellant enter Alfreda Davis' nearby apartment. Appellant left the Davis apartment after ten to fifteen minutes.
Keeper testified that appellant choked her on two occasions. Keeper did not lose consciousness during the episodes and was able to breath.
On May 12, 1988, appellant arrived for work at the Saru Lounge where appellant provided security. While at the bar., appellant entered into a conversation with Avis Robinson, a local prostitute. Robinson frequented the Saru Lounge. Blackwell noticed that appellant was intoxicated and asked appellant to leave. Appellant did depart but eventually returned to the establishment. Later, bar patron Donald Brown observed appellant and Robinson talking behind the bar near the dumpster. Robinson came back inside the Saru Lounge a few minutes later. Robinson talked to Brown about the apartment in the back of the building which was available for rent.
Later, Blackwell saw appellant walking down the street near the bar. Blackwell stated this occurred as he and the bartender were closing the bar sometime near 11:30 p.m. Sometime between 11:30 and 12:30 p.m., Robert Woods heard voices either outside or in the apartment below his. Woods resided in the apartment above the one in which Robinson's body was discovered. Woods testified that the voices belonged to a man and a woman. Woods looked out a few minutes later and saw appellant walking around toward the front of the building. Woods did not see a female anywhere.
Clifton Cousins testified that he was at the Saru Lounge on the night of May 11, 1988. Cousins overheard Blackwell tell appellant that he wanted Avis Robinson "did right." Cousins understood this to mean Blackwell wanted Robinson to be killed. Cousins returned to the bar on the next night, May 12, 1988. Cousins asked Robinson if she wanted to use some of his crack cocaine. Robinson agreed and took Cousins to the vacant apartment in the back of the building. Appellant accompanied Robinson and Cousins. The apartment was locked so appellant pried some plywood from the window. The trio entered the apartment through the window. Once inside, Robinson and Cousins had sexual relations while appellant observed. Afterward, Cousins began to smoke the crack cocaine. Appellant demanded that Robinson also have sex with him. When Robinson refused, appellant struck her. Robinson initially struggled but finally complied. When appellant finished, Robinson sat up and turned toward Cousins. Appellant was behind Robinson, to her left, at the time. Appellant strangled Robinson with her pants. Appellant then told Cousins to help carry the body to the closet. At first, Cousins refused but agreed when appellant produced a pistol. The men carried Robinson to the closet and used her pants to hang the body from a hook.
The police did not interview Cousins about the murder until 1992. At that time, Cousins was incarcerated on a robbery charge. He wrote letters to the Plain Dealer newspaper, the prosecutor's office, and the Cleveland Police Homicide Unit. On June 18, 1992, Cousins made a statement in which he implicated himself and appellant in Robinson's murder. Cousins received no promises of favorable treatment in exchange for the statement. Cousins also confessed to another unrelated murder. Cousins pled guilty to both murders and received concurrent terms of fifteen years to life.
Cousins agreed to testify against appellant. That case was called to trial on January 6, 1993. At that time, Cousins refused to testify because of threats made by appellant against Cousins' children. The state dismissed the case as a result. Cousins agreed to testify at this trial after ensuring that his children would be safe.
Gwendolyn Jackson testified that she attended a party given in appellant's honor after the 1993 dismissal. At the party, appellant stated he had been implicated in a murder but that the person who implicated him was lying. Appellant went on to state that he went behind the bar with the person who implicated him and the victim. Appellant passed out because he was high. When he regained consciousness, the woman was dead.
The jury returned a verdict of guilty on the charge of murder. Appellant has appealed from this decision.
 II.
In his first assignment of error, appellant, challenges his conviction as being unsupported by sufficient evidence. Appellant asserts that no credible evidence was admitted below which would sustain his conviction for murder.
A trial court is required to grant a motion for acquittal made pursuant to Crim.R. 29 if the evidence is insufficient to support a conviction for the offense. State v. Pickett (1996), 108 Ohio App.3d 312,314. A trial court shall not grant a Crim.R. 29 motion "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v.Bridgeman (1978), 55 Ohio St.2d 261, syllabus.
Sufficiency is a legal standard which is applied to determine whether the evidence admitted at trial is legally sufficient to support the verdict as a matter of law. State v. Thompkins
(1997), 78 Ohio St.3d 380.
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus. In essence, sufficiency is a test of adequacy. Whether the evidence presented in a case is legally sufficient to sustain verdict is a question of law and a conviction based upon legally insufficient evidence constitutes a denial of due process. Thompkins, supra.
Appellant argues that Clifton Cousins' testimony completely lacked credibility because Cousins' motive for testifying was suspect. Appellant points out that Cousins waited four years before coming forward with his information regarding the death of Avis Robinson. Appellant submits that, without the testimony of Cousins, the state produced no evidence proving that appellant murdered Robinson.
Although appellant asserts that Cousins' motive for testifying was highly suspect, appellant never offers any explanation as to why Cousins would implicate himself or appellant in the murder of Avis Robinson. Nothing in the record reflects that the police suspected Cousins. Cousins had no apparent motive to lie when the result was being charged in the murder. Cousins admitted on the stand that he was incarcerated for an aggravated robbery at the time of his confession. Cousins also admitted to his involvement in another murder, apparently for which he was not a suspect at the time. The prosecution made no offer of leniency in return for Cousins' confession or testimony. The jury was made aware of Cousins' involvement in a gang. Even with all this negative information concerning Cousins, the jury chose to believe his testimony about the murder and appellant's role in murdering Avis Robinson. It is well settled that the trier of fact primarily makes the determinations regarding the credibility to be afforded witnesses. State v. Dye (1998), 82 Ohio St.3d 323, 329. The jury is better situated than a reviewing court to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of their testimony. See Myers v. Garson (1993), 66 Ohio St.3d 610, 615. The jury was free to believe all, part, or none of the testimony of each witness who appeared before them. State v. Nichols
(1993), 85 Ohio App.3d 65.
Cousins' testimony was that appellant strangled Avis Robinson. The jury was free to give credence to his testimony which was sufficient to support appellant's conviction for murder.
Appellant's first assignment of error is overruled.
 III.
In his second assignment of error, appellant contends the trial court abused its discretion by admitting the testimony of two prosecution witnesses who were not included on the prosecution's witness list. Appellant argues that Crim.R. 16 requires the prosecutor to disclose all evidence to the defendant, including the names of any witnesses the state intends to call at trial. The names of Alfreda Davis and Gwendolyn Jones did not appear on the state's list of witnesses. The prosecutor stated at trial that Davis' name was inadvertently omitted from the state's witness list. The prosecutor averred he only learned of the incident about which Jones testified that morning.
Crim.R. 16 (B) requires the prosecution to disclose the names of all witnesses whom the prosecutor intends to call at the defendant's trial. Crim.R. 16 (D) extends the prosecutor's duty to disclose to include promptly providing to the defense any additional matter which would have been subject to discovery. Crim.R. 16 (E) (3) provides that a failure to comply with Crim.R. 16 may result in the trial court sanctioning the erring party. The trial court can choose between the various options set forth in the rule or make any order it deems to be just under the circumstances. The trial court has broad discretion in deciding what, if any, sanction to impose. State v. Finnerty (1989),45 Ohio St.3d 104, 107. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151.
For a discovery rule violation, the trial court is required to impose the least severe sanction that is consistent with the purpose of the discovery rules which is to prevent surprise and the secreting of evidence favorable to the opposing party.Lakewood v. Papadelis (1987), 32 Ohio St.3d 1. The trial court should not impose a sanction on the prosecution for a Crim.R. 16 violation unless the prosecutor's noncompliance with the discovery rules is of sufficient significance to result in a denial of the accused's right to a fair trial. State v. Parker
(1990), 53 Ohio St.3d 82, 86. The failure to provide the name and address of a witness does not mean that the witness should be prevented from testifying if it can be shown that the omission was not willful, foreknowledge of the statement would not have benefitted the defendant in the preparation of his defense, and the defendant was not prejudiced by the admission of the evidence. State v. Heinish (1990), 50 Ohio St.3d 231, syllabus. A violation of discovery rules which is inadvertent or for which compliance was impossible usually is excusable. State v. Edwards
(1976), 49 Ohio St.2d 31.
The prosecution first learned of the content of Gwendolyn Jackson's testimony the morning of trial. Jackson verified this on the stand. The prosecution immediately told the defense about Jackson and the substance of her testimony. While discussing the defense's objection to Jackson's testimony, the trial court offered defense counsel as much time as he wanted to interview Jackson. The trial court went on to state:
 I'm trying to avoid unfair prejudice to the defendant. This lady, or whoever she is, apparently is going to testify to comments that the defendant made six or seven years after the fact, claiming he was present at the time of a homicide.
 No doubt it's prejudicial. That's why the State is calling her. I'm asking you what more I can do at this time. I'm not going to exclude it. If you need more time to talk to her, obviously your exceptions are noted for the record.
(Tr. 426-427). The trial court again repeated that the defense should let the court know if more time was needed. There is no indication in the record that appellant's attorney ever requested additional time to interview Jackson. In State v. Czajka (1995),101 Ohio App.3d 564, this court upheld the admission of a witness's testimony who was not on the prosecution's witness list. The court noted that the defense was offered time to prepare for the witness but did not do so.
As in Czajka, appellant's attorney was offered additional time to prepare for Jackson's testimony but did not take advantage of the offer. Further, the record shows that the prosecution promptly notified the defense about the witness as soon as the state became aware of the substance of her testimony. Crim.R. 16 (D) merely requires prompt notification about the evidence and that the evidence be made available to the opposing party. SeeState v. Wallace (July 8, 1999), Cuyahoga App. No. 74474, unreported. The state did not violate Crim.R. 16 because the prosecutor promptly disclosed to the defense that Jackson would testify and what the substance of her testimony would be at trial. Further, the trial court afforded the defense ample opportunity to interview Jackson.
Appellant also objects to the testimony of Alfreda Davis. The state admitted it violated Crim.R. 16 by failing to include Davis' name on its witness list. The prosecutor maintained that the exclusion was due to a clerical error. Appellant has not provided any evidence to refute the prosecutor's reason for the omission. Therefore, no willful Crim.R. 16 violation took place. Further, appellant has not demonstrated prejudice because the defense was well aware of the existence of Davis prior to trial. She was one of appellant's girlfriends at the time the murder was committed. Appellant has not demonstrated he was prejudiced by Davis testifying at his trial.
Appellant's second assignment of error is overruled.
 IV.
In his third assignment of error, appellant argues that the trial court abused its discretion by admitting evidence of other acts in violation of Evid.R. 404 (B) and Evid.R. 403 (A). Appellant submits that the testimony he choked Carleen Keeper and Alfreda Davis was inadmissible and prejudicial.
A reviewing court will not reverse the judgment of the trial court for failure to admit or exclude evidence unless the trial court clearly abused that discretion, resulting in prejudice to the complaining party. State v. McCray (1995), 103 Ohio App.3d 109. An abuse of discretion connotes more than a mere error of law. Rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. State v. Montgomery
(1991). 61 Ohio St.3d 410, 413.
An accused cannot be convicted of one crime by proving he or she has committed other crimes or is a bad person. State v.Jamison (1990). 49 Ohio St.3d 182. Evid.R. 404 (B) provides:
 Other crimes, wrongs or acts. Evidence of the other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Evidence of other crimes may be admissible to show "motive or intent, the absence of mistake or accident on [defendant's] part, or the defendant's scheme, plan, or system in doing the action in question." R.C. 2945.59.
Evid.R. 404 (B) and R.C. 2945.59 are exceptions to the general rule which excludes evidence of previous or subsequent criminal acts by the accused which are wholly independent from the charges for which the accused is on trial. State v. Hector (1969),19 Ohio St.2d 167. Because they are exceptions, Evid.R. 404 (B) and R.C. 2945.59 are strictly construed against admissibility. The evidence may be admitted if the other act tends to show by substantial proof any of those things enumerated in R.C. 2945.59
and Evid.R. 404 (B). State v. Broom (1988), 40 Ohio St.3d 277, paragraph one of the syllabus. The acts may or may not be similar to the crime at issue. Id. Evidence of prior acts may not be used to prove the inference that the defendant acted in conformity with his other acts or that he has a propensity to act in such a manner. See State v. Smith (1990), 49 Ohio St.3d 137, 140. The prior act cannot be too remote and must be closely related in nature, time, and place to the offense charged. State v.Henderson (1991), 76 Ohio App.3d 290, 294.
Appellant denied he murdered Avis Robinson. Therefore, appellant placed the issue of the perpetrator's identity squarely in issue below. Evidence of other acts may be admitted to establish identity under Evid.R. 404 (B). Jamison, supra. The other acts evidence should establish a modus operandi that shares common features with the charged crime and is identifiable with the defendant. State v. Lowe (1994), 69 Ohio St.3d 527, 531. The evidence is admissible to prove identity through the characteristics of the act rather than through a person's character. The evidence must be related to and share common features with the crime for which the defendant is being tried. Id.
Both Keeper and Davis testified that appellant choked them during arguments. Davis stated that the incident occurred in 1988. Keeper averred appellant choked her twice in the year before the murder. The incidents were close in time to the murder and the choking method used by appellant with his girlfriends was similar to the strangulation of Robinson. Appellant's method of squeezing the neck of different women was similar enough to be admissible in order to establish his identity by modus operandi
under Evid.R. 404 (B)
Appellant also contends the evidence should have been excluded under Evid.R. 403 (A) which provides that relevant evidence must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. There is nothing in the record showing that the prejudice to appellant was unfair or substantially outweighed the probative value of admitting evidence which tended to prove the identity of the murderer.
Appellant's third assignment of error is overruled.
 V.
In his fourth assignment of error, appellant contends that his conviction for murder was against the manifest weight of the evidence. Appellant again asserts that the testimony of Clifton Cousins was not credible or reliable. Appellant maintains Cousins was motivated by personal interest, although appellant admits that Cousins' motivation is, at best, a matter of pure speculation.
To determine whether a conviction is against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Thompkins, supra, at 387, citing State v. Martin (1983), 20 Ohio App.3d 172,175.
The credibility of Cousins as a witness already was discussed in appellant's first assignment of error. It must be noted that the coroner testified that he discovered a furrow only on the left side of Robinson's neck. This indicated the person applying the pressure was on Robinson's left side. Cousins testified that Avis Robinson had turned to her right to face Cousins when appellant began strangling her. Appellant was on Robinson's left side at the time. Therefore, the coroner's testimony was compatible with that of Cousins.
Cousins' motivation for testifying against appellant and implicating himself in different serious crimes is unknown. However, it is difficult to discern how Cousins would benefit from lying about his involvement in Robinson's murder or by implicating appellant. Because appellant offers nothing but mere speculation in this regard, that part of his argument must be disregarded.
A review of the record shows that evidence of adequate quality was admitted below supporting appellant's conviction for the murder of Avis Robinson. The jury's verdict was not against the manifest weight of the evidence.
Appellant's fourth assignment of error lacks merit.
 VI.
In his fifth assignment of error, appellant asserts that a remark made by the prosecutor in opening argument constituted misconduct. The prosecutor stated:
 There was evidence that the last person who saw her alive is the defendant, Richard Hood, and there was evidence they were together that night in the apartment — not in the apartment — that there was evidence they were together.
(Tr. 19). It is appellant's contention that this statement resulted in his being denied a fair trial.
Appellant never raised an objection to the prosecutor's remark. Any alleged impropriety in the prosecutor's comment is waived absent plain error. See Crim.R. 52 (B); State v. White (1998),82 Ohio St.3d 16. Notice of plain error is taken with the utmost caution, under exceptional circumstances, and only to prevent the manifest miscarriage of justice. State v. Landrum (1990), 53 Ohio St.3d 107,111.
Appellant admits that it is unlikely the jury would have acquitted him but for the statement by the prosecutor. Under a plain error analysis, reversal of a conviction is appropriate only if it can be said that, but for the alleged error, the result of the trial clearly would have been different. State v.Gumm (1995), 73 Ohio St.3d 413, 428. Because appellant cannot even argue that the outcome of the trial would have been otherwise if the brief statement had not been uttered, no plain error exists.
Appellant's fifth assignment of error is meritless.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
The Defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JOHN T. PATTON. PJ. and
KENNETH A ROCCO. J. CONCUR.
 _________________________ LEO M. SPELLACY JUDGE