JOURNAL ENTRY AND OPINION
David Rome appeals from a judgment of the trial court finding him guilty of rape with violent sexual predator specifications as charged in counts one and four of the indictment and gross sexual imposition as charged in count six of the indictment. On appeal, he assigns the following errors for our review:
 I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ADMITTING HEARSAY STATEMENTS OF THE ALLEGED VICTIMS TO PERSONNEL AT RAINBOW BABIES AND CHILDREN'S HOSPITAL ON JUNE 9, 1999, BECAUSE THE OUT-OF-COURT STATEMENTS WERE NOT MADE FOR PURPOSES OF OBTAINING MEDICAL DIAGNOSIS OR TREATMENT AND WERE NOT ADMISSIBLE UNDER ANY OTHER EXCEPTION TO THE HEARSAY RULE.
 II. THE ADMISSION OF THE ALLEGED VICTIM'S OUT-OF-COURT STATEMENTS DENIED APPELLANT HIS RIGHT OF CONFRONTATION UNDER THE SIXTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 III. THE JUDGMENT OF CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 IV. THE TRIAL COURT ABUSED ITS DISCRETION IN HOLDING THAT THE ALLEGED VICTIMS WERE COMPETENT TO TESTIFY BECAUSE THEY LACKED SUFFICIENT ABILITY TO RECEIVE A JUST IMPRESSION OF THE FACTS, TO RECOLLECT THOSE IMPRESSIONS, AND TO COMMUNICATE THOSE IMPRESSIONS.
 V. THE EVIDENCE WAS LEGALLY INSUFFICIENT TO SUPPORT THE JUDGMENTS OF CONVICTION.
 VI. APPELLANT'S CONVICTION OF THE SEXUALLY VIOLENT PREDATOR SPECIFICATION WAS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE THAT APPELLANT IS LIKELY TO COMMIT ANOTHER SEXUALLY VIOLENT OFFENSE.
Having reviewed the record and the pertinent law, we affirm in part and reverse in part the judgment of the trial court.
Cleveland Police Officer Marjorie Gerbec conducted the child rape investigation at the children's home and spoke with the child victim, C.W., and her mother, Stacie Woods.[1] Officer Gerbec then advised them to go to St. Luke's Hospital so the child victim could be examined. The police arrested Rome.
Cuyahoga County Department of Children and Family Services (CCDCFS) conducted an investigation that revealed C.W.'s minor aunt, R.R.W. also complained of sexual abuse by Rome, her father. Thereafter, the police charged Rome with multiple counts of rape and gross sexual imposition involving two children.
The court conducted a competency hearing to determine whether the minor victims could testify. After determining both victims competent to testify, the trial court held a bench trial, where the state presented testimony from the victims, several CCDCFS workers, Rome's wife, Octavia, and Lauren McAliley, a nurse practitioner. The defense did not present any evidence. The court then found Rome guilty of rape with violent sexual predator specifications as charged in counts one and four and guilty of gross sexual imposition as charged in count six. The trial court found him not guilty on the remaining charges.
In the first two assigned errors, Rome alleges the court erred when it admitted hearsay testimony of the victims. Specifically, Rome takes issue with the statements made to McAliley, a pediatric nurse practitioner who treated the victims at University Hospitals.
A trial court's decision to admit or exclude evidence will not be reversed absent a clear abuse of discretion that materially prejudices the objecting party.[2] In determining whether the admission of hearsay evidence unduly prejudiced defendant, * * * the evidence in favor of conviction, absent hearsay, must be so overwhelming that the admission of those statements was harmless beyond a reasonable doubt.[3]
Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.[4] Although this is the general rule, the Rules of Evidence provide exceptions. For example, statements made for purposes of medical diagnosis or treatment and describing past or present symptoms, pain or the general character of the cause or external source of them is not hearsay.[5]
In this case, McAliley, the State's expert witness, testified the victims were referred to her clinic to determine if there were any medical injuries or infections that required treatment and also to determine whether there were any suggestions of physical abuse. In order to make that determination, she ordered laboratory tests for each victim and performed an examination of the genital area on each of the victims. The physical examinations neither ruled out nor confirmed physical abuse of either victim. McAliley also questioned the victims regarding who hurt them and how.
She testified C.W. told her David touched her in my business. C.W. explained she was referring to her butt and that he touched her on the inside and the outside of her butt with his penis. C.W. also stated to McAliley David touched her poo-poo, meaning her vagina, with his penis and his mouth. McAliley then asked her if she saw anything come out of his penis and C.W. responded some white stuff came out. When asked if she ever saw any blood, C.W. told her, My bootie was bleeding after one time and she pointed to her buttocks. C.W. also stated David told her he would kill her if she told anyone what had happened.
In regard to her interview with the second victim, R.R.W., the same physical examination was completed and neither ruled out nor confirmed physical abuse. McAliley asked R.R.W. why she was at the hospital and R.R.W. responded My daddy do something. I say `Stop, daddy', and then I told my mommy, and my brother, and they say, `David, why do you that to [R.R.W.], and you stop', and he say, `No', he's gonna still do it. R.R.W. informed McAliley David tried to put his penis in her bootie, he touched her mouth with his penis and pee came on her mouth and nose when he did this.
A trial court does not abuse its discretion when it admits a child declarant's statements made for the purpose of medical diagnosis or treatment pursuant to Evid.R. 803(4), without first establishing the child declarant's unavailability to testify. Once the statements are admitted, their credibility is a matter to be evaluated by the fact finder.[6]
After reviewing the testimony admitted over defense objection, we conclude the trial court properly evaluated the circumstances accompanying the making of the children's statements. Since there is insufficient reason to doubt the statements were made for purposes of medical diagnosis or treatment, the trial court did not abuse its discretion in finding the statements were admissible pursuant to Evid.R. 803(4). Accordingly, these assigned errors lack merit.
Rome also argues his conviction is against the manifest weight of the evidence. We disagree.
In State v. Martin[7] (1983), 20 Ohio App.3d 172, the court stated:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
Additionally, the court in State v. Thompkins[8], stated:
 Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.
Further, in Tibbs v. Florida[9] the Court stated:
 * * * A reversal based on the weight of the evidence, moreover, can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict.
In this case, the State assumed the burden to prove all the elements of the crime of rape and gross sexual imposition. Rape is defined in R.C.2907.02 as follows:
 (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies:
* * *
 (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
Additionally, gross sexual imposition is defined in R.C. 2907.05 as follows:
 (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender * * * when any of the following applies:
* * *
 (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.
Based on the testimony elicited from the victims, which was corroborated through McAliley's testimony, we concluded Rome's conviction for rape and gross sexual imposition were not against the manifest weight of the evidence. Accordingly, this assigned error lacks merit.
In his fourth assignment of error, Rome alleges the trial court abused its discretion when it determined the victims were competent to testify. We disagree.
Every person is competent to be a witness except children under ten years of age who appear incapable of receiving just impressions of the facts and transactions of which they are questioned, or of relating them truthfully.[10] A plain reading of Evid.R. 601(A) leads to the conclusion that the competency of individuals ten years or older is presumed, while the competency of those under ten must be established.[11]
"The rule favors competency, conferring it even on those who do not benefit from the presumption, such as children under ten, if they are shown to be capable of receiving `just impressions of the facts and transactions respecting which they are examined' and capable of `relating them truly.'"[12] As a result, absent some articulable concern otherwise, an individual who is at least ten years of age is per se competent to testify. The presumption established by Evid.R. 601(A) recedes in those cases where a witness is either of unsound mind or under the age of ten. In such cases, the burden falls on the proponent of the witness to establish that the witness exhibits certain indicia of competency.[13]
In State v. Frazier[14], the Court held that in determining whether a child under ten is competent to testify, the trial court must take into consideration: the child's ability to receive accurate impressions of fact, the child's ability to recollect those impressions, the child's ability to communicate what is observed, the child's understanding of truth and falsity, and the child's appreciation of his or her responsibility to tell the truth. Once a trial judge concludes that the threshold requirements have been satisfied, a witness under the age of ten will be deemed competent to testify.[15]
It is well settled that as the trier of fact, a trial judge is required to make a preliminary determination as to the competency of all witnesses, including children.[16] Absent an abuse of discretion, competency determinations of the trial judge will not be disturbed on appeal.[17] In State v. Bradley[18] the court determined `the trial judge, who saw the children and heard their testimony and passed on their competency, was in a far better position to judge their competency than is this court, which only reads their testimony from the record * * *.'[19] Furthermore, `the term abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable * * *.'[20]
In this case, the trial court conducted a competency hearing of C.W. and R.R.W. R.R.W. knew her birthday as well as her grade in school and the name of her teacher. She was able to demonstrate that she knew the difference between a lie and the truth and stated that she intended on telling the truth while in court. She also stated she knew the reason she was in court.
C.W. also knew her birthday as well as the name of her school. She stated she knew the reason she was in court and that she intended on telling the truth. After examining both victims, the court determined them to be competent.
It should be noted that the defense failed to object to the trial court's finding of competency of either victim. However, even if an objection had been made, we conclude the trial court did not abuse its discretion in making such a finding. Here, the trial court considered the factors enumerated in Frazier, observed the demeanor of the victims and considered whether they had the ability to receive accurate impressions of fact, recollect those impressions, communicate what was observed, demonstrate an understanding of truth and falsity, and appreciate a responsibility to be truthful. Accordingly, this assignment of error is without merit.
In his fifth assignment of error, Rome argues the evidence against him was insufficient to sustain a conviction. The test for sufficiency of the evidence raises a question of law to be decided by the court before the jury may receive and consider the evidence of the claimed offense. In State v. Jenks[21], the court stated:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Citations omitted.)
 After viewing the evidence in a light most favorable to the prosecution, we have concluded any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
In assigned error six, Rome argues the trial court erred in determining him to be a sexually violent predator because the evidence presented does not establish that he is likely to re-offend. Furthermore, Rome argues the trial court is guided by the R.C. 2971.01(H)(2) factors and this record does not show that the trial court considered the factors.
For purposes of division (H)(1) of this section, any of the following factors may be considered as evidence tending to indicate that there is a likelihood that the person will engage in the future in one or more sexually violent offenses:
 (a) The person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense. For purposes of this division, convictions that result from or are connected with the same act or result from offenses committed at the same time are one conviction, and a conviction set aside pursuant to law is not a conviction.
 (b) The person has a documented history from childhood, into the juvenile developmental years, that exhibits sexually deviant behavior.
 (c) Available information or evidence suggests that the person chronically commits offenses with a sexual motivation.
 (d) The person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims.
 (e) The person has committed one or more offenses in which one or more victims were physically harmed to the degree that the particular victim's life was in jeopardy.
(f) Any other relevant evidence.[22]
R.C. 2971.01(H)(2) specifically uses non-mandatory language. Here, the record shows the trial court had before it Rome's prior misdemeanor conviction, the age of the children, and the children's explanation of what occurred. The query for us is whether this is sufficient. Before we address the sufficiency question, we address Rome's argument that there is nothing in the record to show that the trial court considered the factors.
We have historically held that the factors in R.C. 2971.01(H)(2) are factors to be considered as evidence, not mandatory findings.[23]
A more subtle issue raised by Rome is whether R.C. 2971.01(I), on the issue of recidivism, requires the trial court to specifically make a recidivate finding and give reasons. We conclude that it does not. In State v. Waver,[24] the trial court did not make any specific findings; however, the record supported the conviction for a sexually violent predator specification.
Additionally, we find little support in the recent Supreme Court of Ohio decision of State v. Thompson.[25] In Thompson, the court confronted R.C. 2950.09(B)(2), which mandates the trial court to consider the factors regarding recidivism. We follow a different analysis when the recidivate issue is raised under the non-mandatory factors of R.C.2971.01(H)(2).
Consequently, we turn to the question of whether this record is sufficient to establish Rome as a sexually violent predator. The standard of review for sufficiency is whether after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
The record in this case showed a prior felony offense,[26] a history of alcohol abuse and mental illness, the testimony of the victims, and their ages. It is our conclusion that this is insufficient to establish that Rome is likely to recidivate.
In the cases where we have upheld a likelihood of recidivism the State has sustained its burden with evidence from a phychotherapist or psychiatrist, or the record amply set forth facts sufficient to meet the State's burden of proof. This court has never required the prosecution to have expert testimony in every sexual predator case. However, in the cases where the expert was absent, the record was complete and sustaining on the issue of recidivism.[27] In State v. Hlavsa, this court stated in this instance, the evidence demonstrated that defendant repeatedly raped his own son and his own daughter over an extended period of time and that only the removal of the children from the home ended the abuse. He was undeterred by the tender ages of the children and the presence of his wife. The evidence also demonstrated that defendant was sexually gratified from the attacks, and overwhelming statistical evidence supports the high potential of recidivism among sex offenders whose crimes involve exploiting young children. State v. Stauter (1998), Ohio App. LEXIS 3311 (July 17, 1998), Greene App. No. 97CA72. Unreported. As noted in Hlavsa, there was more than age.
In this case, the prosecution argued that the rapes occurred over an extended period of time, yet the record does not support this conclusion. Accordingly, we sustain this assigned error.
We affirm in part and reverse in part only on this issue of sexual violent predator.
It is ordered that appellee and appellant share the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, A.J., CONCURS and MICHAEL J. CORRIGAN, J., CONCURS IN PART AND DISSENTS IN PART.
[1] C.W. is the granddaughter of David Rome's wife.
[2] State v. McCray (1995), 103 Ohio App.3d 109, 115,658 N.E.2d 1076.
[3] State v. Kidder (1987), 32 Ohio St.3d 279, 284, 513 N.E.2d 311. See also, State v. Smith 1996 Ohio App. LEXIS 214 (January 25, 1996), Cuyahoga App. No 68745, unreported.
[4] Evid.R. 801(C).
[5] Evid.R. 803(4).
[6] State v. Dever (1992), 64 Ohio St.3d 401, 596 N.E.2d 436.
[7] (1983), 20 Ohio App.3d 172.
[8] (1997) 78 Ohio St.3d 380.
[9] (1982), 457 U.S. 31.
[10] Evid.R. 601(A).
[11] State v. Wallace (1988), 37 Ohio St.3d 87, 94, 524 N.E.2d 466,472.
[12] Turner v. Turner (1993), 67 Ohio St.3d 337, 343, 617 N.E.2d 1123,1128.
[13] State v. Clark (1994), 71 Ohio St.3d 466, 644 N.E.2d 331.
[14] (1991), 61 Ohio St.3d 247, 574 N.E.2d 483, syllabus, certiorari denied (1992), 503 U.S. 941, 112 S.Ct. 1488, 117 L.Ed.2d 629.
[15] Id.
[16] State v. Wilson (1952), 156 Ohio St. 525, 46 O.O. 437,103 N.E.2d 552.
[17] See State v. Frazier, 61 Ohio St.3d at 251,574 N.E.2d at 486-487; State v. Boston (1989), 46 Ohio St.3d 108, 115, 545 N.E.2d 1220,1228.
[18] (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 768.
B
[19] Quoting Barnett v. State (1922), 104 Ohio St. 298, 301,135 N.E. 647, 648.
[20] State v. Moreland (1990), 50 Ohio St.3d 58, 61, 552 N.E.2d 894,898; State v. Adams (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173,404 N.E.2d 144, 149.
[21] (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.
[22] R.C. 2971.01(H)(2).
[23] State v. Bugg (April 7, 2000), Cuyahoga App. No. 74842, unreported.
[24] 2000 Ohio App. LEXIS 3921 (August 28, 2000), Cuyahoga App. No. 73976, unreported.
[25] (2001), 92 Ohio St.3d 584, 752 N.E.2d 276.
[26] State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
[27] State v. Hlavsa 2000 Ohio App. LEXIS 2106 May 18, 2000), Cuyahoga App. No. 76221, unreported.