DECISION AND JUDGMENT ENTRY
This is an appeal from a Scioto County Common Pleas Court judgment, upon a jury verdict, finding Vincent Ray Bomar, defendant below and appellant herein, guilty of two (2) counts of assault in violation of R.C. 2903.13(A). The following errors are assigned for our review:
 FIRST ASSIGNMENT OF ERROR: "THE TRIAL COURT ERRED BY NOT PERMITTING DEFENDANT TO BE TESTED FOR COMPETENCY PURSUANT TO R.C. 2945.37."
 SECOND ASSIGNMENT OF ERROR: "THE TRIAL COURT ERRED, AS AN ABUSE OF DISCRETION AND/OR MATTER OF LAW, UNDER CRIM.R. 16, BY REFUSING TO PERMIT COUNSEL TO REVIEW WITNESS STATEMENT FOR INCONSISTENCIES; FAILING TO FIND ON THE RECORD THAT THE WITNESS STATEMENT CONTAINED REFERENCE TO APPELLANT'S MENTAL STATUS; AND FAILING TO PRESERVE THE WITNESS STATEMENT FOR APPEAL."
 THIRD ASSIGNMENT OF ERROR: "THE TRIAL COURT ERRED AS AN ABUSE OF DISCRETION AND/OR MATTER OF LAW BY REFUSING TO ORDER A CONTINUANCE FOR THE OPPORTUNITY TO ESTABLISH WHETHER THE STATE FAILED TO DISCLOSE EXCULPATORY MATERIAL, BEING THE MENTAL STATUS OF APPELLANT, CAUSING APPELLANT TO BE DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL."
 FOURTH ASSIGNMENT OF ERROR: "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING APPELLANT HIS RIGHT TO COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1 OF THE OHIO CONSTITUTION."
A brief summary of the facts pertinent to this appeal is as follows. Appellant is an inmate incarcerated at the Southern Ohio Correctional Facility (SOCF) near Luscasville, in Scioto County, Ohio. On February 3, 1999, he informed prison personnel that he wanted to be removed from his regular cell and placed in "the hole."[2] The guards, somewhat surprised by this request, informed appellant that confinement in "the hole" was a corrective measure and that he had done nothing wrong to warrant such treatment. Determined to remedy that situation, appellant waited for Nurse Terri Augustine to make her "rounds" that day. When she arrived on the cell block or "range," at approximately 3:30 PM, he called her over to the door of his cell (ostensibly to ask her a question) and then proceeded to masturbate in front of her "[f]ully" exposed. Nurse Augustine left the cell block and "wrote him up" a "ticket" or "conduct report."
That afternoon, corrections officers Donald Good and Gary Daniel were sent to take appellant from his cell to "security control." Appellant first seemed pleased that he was being taken to "the hole" as he had originally wanted. However, when the guards tried to pat him down and handcuff him, appellant turned and struck Officer Good. He then "lunged" at the guard, wrested a walkie-talkie from Officer Good's belt and began swinging it around by the antennae striking both guards about the face and head. Additional correction officers arrived at the scene and appellant was, eventually, subdued and led away.
The Scioto County Grand Jury returned an indictment on November 8, 1999, charging appellant with two (2) counts of assault in violation of R.C. 2903.13(A).[3] Appellant pled not guilty to both charges and counsel was appointed to represent him during the proceedings below. The matter came on for a pretrial conference on January 28, 2000, at which time appellant requested that he be appointed new counsel. An inquiry was made as to his reasons for wanting a new attorney, but all that appellant would say was that his present counsel did not "fit [his] criteria." Appellant offered no explanation as to what that "criteria" might be. The trial court ultimately denied appellant's request. He was permitted, however, to represent himself during trial with counsel on "stand by" to advise and assist with appellant's defense.[4]
The matter came on for a jury trial beginning February 14, 2000. Prior to the first witness, however, defense counsel informed the court at a bench conference that appellant had just revealed to him an allegedly "lengthy psychiatric history." It was also revealed that the prosecution had some prior degree of knowledge of appellant's "mental caseload problem," but had not disclosed that knowledge during discovery. Counsel made no specific request with respect to this new information and the trial court declined to "halt" the proceedings at that late date. Nevertheless, the court informed counsel that he could "subpoena records" and "present further evidence" about appellant's mental status later that day or the following day. The trial then proceeded with the State calling several SOCF personnel, including Nurse Augustine and Officers Good and Daniel, who gave their respective accounts of the incident in question.
Appellant did not testify on his own behalf, but he did call several of his fellow prisoners as witnesses. The defense witnesses sharply contradicted the account(s) given by the correction officers. Inmate Frankie Ellis stated that he and appellant had been discussing "bible matters" when Nurse Augustine passed appellant's cell without incident. Several minutes later, "three or four" prison guards burst into his cell and held appellant "like they held Jesus Christ to the cross" and began punching him "dead center of his face." This testimony was largely corroborated by another inmate, Raymond Hairston, who related that correction officers held appellant "in like a crucifix type, like Jesus, you know, his arms spread," and began beating him about the face and chest.[5]
The jury returned verdicts finding appellant guilty on both counts of the indictment. On February 14, 2000, the trial court sentenced appellant to consecutive eleven (11) month terms of imprisonment on each charge, which terms were also to be served consecutively to the sentence appellant was already serving at the time of the assault(s). Appellant filed pro se motions asking for a new trial and for temporary restraining order(s) against various prison personnel.[6] Those motions were summarily overruled and this appeal followed.
 I
Appellant's first assignment of error posits that the trial court "erred by not permitting [him] to be tested for competency pursuant to R.C. 2945.37." We disagree. We note at the outset that this statute does not directly address competency evaluations (which is dealt with, instead, by R.C. 2945.371) but, rather, delineates the procedure by which the issue is raised and considered by trial courts. We therefore consider appellant's argument in that light.
Our analysis begins from the standpoint that all criminal defendants are presumed to be competent to stand trial. See R.C. 2945.37(G). A defendant will not be found incompetent simply because he received treatment for mental illness. Id. at (F); also see State v. Hall (Feb. 25, 2000), Jackson App. No. 99CA847, unreported; State v. Barnhart (Sep. 24, 1997), Washington App. No. 96CA32, unreported. A defendant must demonstrate that he was unable to understand the proceeding and to assist in his own defense. See State v. Swift (1993), 86 Ohio App.3d 407, 411;621 N.E.2d 513; also see State v. Twyford (Sep. 25, 1998), Jefferson App. No. 93-J-13, unreported; State v. McKenzie (Dec. 1, 1995), Lucas App. No. L-94-350, unreported.
The procedure governing determination of competency is set forth in R.C. 2945.37(B) which states, inter alia, as follows:
 "In a criminal action in a court of common pleas . . . the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section. If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion."
A competency hearing is only mandatory under this provision if the issue is raised prior to commencement of trial. State v. Bekesz (1991),75 Ohio App.3d 436, 441, 599 N.E.2d 803, 806; also see State v. Gaston
(Aug. 28, 1998), Lucas App. No. L-97-1016, unreported; State v. DeNiro
(Dec. 16, 1994), Ashtabula App. No. 93-A-1775, unreported; State v.Charley (Oct. 27, 1993), Lorain App. No. 5514, unreported.
In the case sub judice, we note that the record contains no motion or any other filing which requested a mental evaluation or called appellant's competency into question. The first mention of this issue appears to have been at a bench conference just prior to opening arguments.[7] However, even at that point, it is not at all clear that appellant actually "raised" the competency issue. Rather, defense counsel merely revealed that appellant had told him about an allegedly "lengthy psychiatric history." Counsel then remarked to the court that he "quite frankly [did not] know where we can go from here." This dialogue does not, however, constitute a clear and definitive request regarding the competency issue. Appellant made no explicit request to conduct a competency hearing or to conduct a mental evaluation.
In any event, we again note that this particular discussion occurred after the trial had already begun. Trials are generally deemed to have commenced when a jury is empaneled and sworn. See State v. Hill (Feb. 18, 2000), Fairfield App. No. 98CA67, unreported; also see Frazee v.Ellis Bros., Inc. (1996), 113 Ohio App.3d 828, 831, 682 N.E.2d 676, 678. The court had seated the jury and opening arguments were about to begin when appellant first mentioned his alleged mental problems. We thus conclude that the issue of appellant's competency was not raised prior to trial and that a hearing was not mandatory.
Even assuming arguendo that the competency issue had been properly raised prior to trial, and that a hearing was mandated by R.C.2945.37(B), we would still find that the failure to hold such hearing was harmless error pursuant to Crim.R. 52(A). The Ohio Supreme Court has held that any error by a trial court in not conducting a mandatory hearing under R.C. 2945.37 is harmless if the record fails to reveal sufficient indicia of incompetency. See State v. Eley (1996), 77 Ohio St.3d 174,184, 672 N.E.2d 640, 650; State v. Bock (1986), 28 Ohio St.3d 108, 110,502 N.E.2d 1016, 1019. There is nothing whatsoever in the record of this case to indicate that appellant was incompetent.
Our review of the record reveals that the only evidence of appellant's mental condition that was ever introduced below was the testimony by Nurse Augustine. She testified that appellant was carried on the prison's "out-patient mental health caseload." We further note, however, that Nurse Augustine's testimony was contradicted by Officer Daniel who stated that (at the time of the assaults) appellant was held in "GP" or "general population." No records were introduced below to address appellant's mental status and no physician or psychologist gave expert testimony. Even Nurse Augustine did not give any explanation as to appellant's alleged mental illness or offer an opinion as to his competency. In short, we find nothing in the trial court record to indicate that appellant was incompetent.
Appellant counter argues that the court should have held a hearing for "good cause shown" when his alleged mental problems were discussed during trial. Again, we disagree. The decision whether to conduct a mid-trial competency hearing pursuant to R.C. 2945.37(B) is relegated to the sound discretion of the trial court. State v. Smith (2000), 89 Ohio St.3d 323,329, 731 N.E.2d 645, 652; State v. Berry (1995), 72 Ohio St.3d 354, 360,650 N.E.2d 433, 439; State v. Rahman (1986), 23 Ohio St.3d 146, 156,492 N.E.2d 401, 410. In exercising that discretion, the court should consider doubts expressed by defense counsel regarding competency, any evidence of irrational behavior, the defendant's demeanor at trial and any prior medical opinions regarding the defendant's competency. SeeState v. Draughn (1992), 76 Ohio App.3d 664, 669, 602 N.E.2d 790,792; also see State v. Reeder (Nov. 30, 1998), Clinton App. No. CA97-12-013, unreported. Here again, we find no evidence on this subject raised during the proceedings below.
We note that trial counsel did not express any doubts concerning his client's competency beyond a mere recitation of what had already been said regarding appellant's history with mental illness. Also, nothing in appellant's behavior or demeanor suggested that he was unable to understand these proceedings or assist in his own defense.[8] Indeed, we note that appellant artfully conducted the direct examination of his defense witnesses. Moreover, no expert opinions, medical records or any other sort of evidence to document appellant's alleged mental illness or address the issue of his competency was introduced below. In the absence of any such evidence, we find no error in the trial court's decision foregoing mental evaluations and a competency hearing.[9]
Accordingly, we overrule appellant's first assignment of error.
 II
We next proceed, out of order, to appellant's third assignment of error. Appellant argues that the trial court improperly denied him a continuance that he had requested in order to determine whether the prosecution had withheld exculpatory evidence about his "mental status." We disagree with appellant.
The decision to grant or deny a continuance rests within the sound discretion of the trial court. State v. Mason (1998), 82 Ohio St.3d 144,155, 694 N.E.2d 932, 947; State v. Claytor (1991), 61 Ohio St.3d 234,241, 574 N.E.2d 472, 478; State v. Unger (1981), 67 Ohio St.2d 65,423 N.E.2d 1078, at the syllabus. A trial court decision on this issue will not be reversed on appeal absent a showing of an abuse of that discretion. State v. Meredith (Jun. 22, 2000), Lawrence App. No. 99CA2, unreported. An abuse of discretion is more than an error of law or judgment; it implies that the lower court's attitude is unreasonable, arbitrary or unconscionable. State v. Clark (1994), 71 Ohio St.3d 466,470, 644 N.E.2d 331, 335; State v. Moreland (1990), 50 Ohio St.3d 58,61, 552 N.E.2d 894, 898; State v. Adams (1980), 62 Ohio St.2d 151, 157,404 N.E.2d 144, 149. An abuse of discretion means that the result is so palpably and grossly violative of fact or logic that it evidences not the exercise of will, but the perversity of will, not the exercise of judgment, but the defiance of judgment, not the exercise of reason but, instead, passion or bias. Nakoff v. Fairview Gen. Hosp. (1996),75 Ohio St.3d 254, 256, 662 N.E.2d 1, 3. We find no abuse of discretion by the trial court on this issue.
First, as mentioned previously, no evidence introduced at trial definitively showed that appellant had ever suffered mental health problems. Although Nurse Augustine testified that appellant was carried on the prison's "out-patient mental health caseload," no further explanation was ever given as to what that status might have meant. Second, even if appellant had mental health problems, nothing in the record indicates that the prosecution possessed any such material and then failed to disclose that material to the defense. The County Prosecutor gave the following explanation at a bench conference:
 "I don't know for sure what his mental history is. I do believe I saw somewhere along the line a note from an investigator saying that he had some kind of mental caseload problem. I do note in the court today we have a Captain Oppy from the Southern Ohio Correctional Facility. He might know more about what [appellant's] mental history is."[10]
Of course, the better practice would have been for the State to disclose whatever it knew about appellant's history of mental illness during discovery. It does not appear from this exchange, however, that the prosecution had anything more than some vague, undefined background knowledge of the issue. It is also reasonable to assume that trial counsel would have discovered this information during a rudimentary investigation of the case. That being said, and considering that no actual evidence exists below to indicate mental illness, we cannot conclude that the court's refusal to grant a continuance was arbitrary, unreasonable or unconscionable.[11]
Accordingly, we overrule appellant's third assignment of error.
 III
We now return to appellant's second assignment of error which raises an issue concerning Nurse Augustine's testimony. During cross-examination, Nurse Augustine was asked whether she had ever prepared a written report about appellant's public display of masturbation. She responded in the affirmative. Nurse Augustine was then asked whether she had a copy of that report with her and she responded in the negative. A bench conference was then held and the prosecution volunteered a copy of the written report for purposes of an in camera inspection to determine whether the report contained any inconsistencies with Nurse Augustine's trial testimony. The court asked defense counsel whether he wanted such an inspection conducted and counsel responded in the affirmative. After a brief recess, the court returned and made the following statement on the record:
 "I want the record to reflect that we were in chambers. I have reviewed the statement of this witness. I did not find any inconsistencies between her testimony here today and that given in the statement. * * * I'm going to require the State to provide this court reporter with a copy of the written statement for preservation in the record for future appeal."
Appellant argues on appeal that these actions by the court were in contravention of its duties under Crim.R. 16 and that this amounted to reversible error. We disagree.
Our analysis begins with the provisions of Crim.R. 16(B)(1)(g) which states, in pertinent part, as follows:
 "Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies. If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.
 Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal."
We note at the outset that this rule requires a motion for in camera
inspection be made "[u]pon completion" of direct examination." In the cause sub judice, however, appellant never made any such motion at all; rather, he merely accepted an offer made by the trial court to conduct such an inspection and that inspection was performed after cross-examination had already begun. Any request for such an inspection was clearly out of rule at this point and we find it somewhat curious that appellant is contesting actions taken for his benefit that the trial court was not required to take. Be that as it may, we find no merit in any of his arguments.
Appellant suggests that the trial court violated Crim.R. 16(B)(1)(g) by not having defense counsel and the prosecutor present when the in camera
inspection was conducted. We are not persuaded. The portion of the transcript cited above shows the court commenting that "we were in chambers." The court's use of the term "we" tends to convey that both sides were represented at the time of the inspection. We find no evidence or indication to the contrary.
Appellant also charges that there were, in fact, inconsistencies between Nurse Augustine's testimony and her written statement. Unfortunately, there is no copy of that statement in the record for us to review and determine if that was indeed the case. Appellant argues that the trial court committed reversible error by not making sure that such a copy was included in the record. We note, however, that the court expressly directed the prosecution and the court reporter to include a copy of that statement in the record. It is therefore logical to assume that the absence of the report was merely an oversight by one of those parties. In any event, appellant could have supplemented the record pursuant to App.R. 9(E). Defense counsel could also have objected, on the record, to the trial court's finding that no inconsistencies existed. Neither of these actions were taken and, thus, we must afford a presumption of correctness to the proceedings below.
Even assuming arguendo that the trial court had failed to properly discharge its duties under Crim.R. 16(B)(1)(g), we would nevertheless find this issue to constitute harmless error. Appellant was not on trial for masturbating in front of Nurse Augustine. Rather, the charges against him were for assaulting Officers Daniel and Good. Nurse Augustine merely provided background information as to why those officers were transferring him to "the hole." It stretches the imagination to contend that any inconsistencies in her testimony would have caused the jury to disregard the various other SOCF personnel who testified concerning that assault and acquit appellant on both offenses. Accordingly, for these reasons, we overrule appellant's second assignment of error.
 IV
This brings us to appellant's fourth and final assignment of error. Appellant argues that the trial court erred in denying his pre-trial request for appointment of new counsel. We disagree with appellant.
We begin our review of this argument by noting that an indigent defendant has a right to competent legal counsel, but not a right to counsel of his own choosing. Thurston v. Maxwell (1965), 3 Ohio St.2d 92,93, 209 N.E.2d 204, 205-206; also see State v. Cowans
(1999), 87 Ohio St.3d 68, 72, 717 N.E.2d 298, 304. The right to competent counsel does not mean that defendants must share a "meaningful relationship" with that attorney. See Morris v. Slappy (1983),461 U.S. 1, 13, 75 L.Ed.2d 610, 621. 103 S.Ct. 1610, 1617; alsosee State v. Glasure(1999), 132 Ohio App.3d 227,239, 724 N.E.2d 1165, 1174. Rather, an indigent defendant is entitled to the appointment of substitute counsel only upon a showing of good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust result. See State v. Blankenship (1995),102 Ohio App.3d 534, 558, 657 N.E.2d 559, 574; State v.Pruitt (1984), 18 Ohio App.3d 50, 57, 480 N.E.2d 499,507-508; also see State v. Poole (Apr. 28, 2000), Hamilton App. No. C-990612, unreported; State v. Dunn (Jun. 28, 1996), Allen App. No. 1-95-74, unreported.[12]
A defendant bears the burden of providing the grounds for a motion for appointment of new counsel. State v. Carter (1998), 128 Ohio App.3d 419,423, 715 N.E.2d 223, 225. If a defendant alleges facts which, if true, would require relief, the trial court must inquire into the defendant's complaint and make that inquiry part of the record. Id.,715 N.E.2d at 225; also see State v. King (1995), 104 Ohio App.3d 434, 437,662 N.E.2d 389, 390-391. The inquiry may be brief and minimal, but it must be made. Carter, supra at 423, 715 N.E.2d at 225;King, supra at 437, 662 N.E.2d at 390-391. Even that limited judicial duty arises only if the allegations are sufficiently detailed and specific. Vague or general objections do not trigger the duty to investigate further.Carter, supra at 423, 715 N.E.2d at 225. The decision to appoint new counsel then rests with the sound discretion of the trial court.Id., 715 N.E.2d at 225; also see State v.Hendking (Feb. 3, 2000), Cuyahoga App. Nos. 75179 75180, unreported; Statev. Smith (Dec. 29, 1998), Lawrence App. No. 98CA12, unreported. With these principles in mind, we turn our attention to appellant's request for new counsel.
Our first observation is that no written motion explains appellant's request. Indeed, there appears to be only an oral request made at a pre-trial conference on January 28, 2000, at which time the following colloquy occurred between the trial court and appellant:
"THE COURT: Mr. Bomar, anything you want to say?
 THE DEFENDANT: Yeah. I would like to dismissed [sic] my attorney and have another counsel to represent me.
THE COURT: For what reason?
 THE DEFENDANT: Well, the primary reason, I don't want to use him.
 THE COURT: Why? What's your reason for not wanting [counsel] as your lawyer?
THE DEFENDANT: Misrepresentation.
THE COURT: Such as?
 THE DEFENDANT: Such as, you know, he doesn't fit my criteria. I don't want him.
THE COURT: What's your criteria?
 THE DEFENDANT: I ain't got no more to say. I don't want him. I want somebody else to represent me."
It is manifestly clear from this exchange that the trial court carried out its duty to make an inquiry into appellant's request for new counsel. Appellant, when given the opportunity, gave no reason for his request beyond a bare explanation that his attorney did not meet certain undefined "criteria." We find no error in the court's decision not to pursue the matter any further and no abuse of discretion in its denying the request altogether. The fourth assignment of error is accordingly overruled.
Having reviewed all errors assigned and argued in the briefs, and finding no merit in any of them, the judgment of the trial court is hereby affirmed.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Evans, J.: Concur in Judgment Opinion
 ___________________________ Peter B. Abele, Judge
[2] The "hole" was defined by corrections officers below as "[s]ecurity control" or a "lockdown block" where prisoners are taken for segregation after they have violated prison rules.
[3] Because the victims of the assault were prison guards, these offenses were fifth degree felonies rather than first degree misdemeanors. See R.C. 2903.13(C)(2)(a).
[4] It seems that appellant was unhappy with that arrangement and informed the trial court that "[n]o, he ain't going to be standing by nothing to represent me." The court was apparently undeterred by his objection(s) and informed him that "[t]hat's how it [would] be."
[5] Although defense counsel cross-examined witnesses during the State's case-in-chief, appellant conducted direct examination of the defense witnesses himself.
[6] These motions were handwritten and are barely legible, thus making the arguments therein virtually impossible to decipher.
[7] As defense counsel aptly noted, appellant should have cooperated and made this information available long before then.
[8] Appellant's brief cites his request to prison officials to be placed in "the hole," and his desire to represent himself as being demonstrative of irrational behavior and demeanor. We are not persuaded. First, we do not discount the possibility that some of the bizarre behavior which occurs in a prison setting is borne more from the desire to be disruptive than from mental illness. Second, were we to hold that a defendant's desire to act as his own counsel was ipso facto evidence of incompetence, then we would be acting in derogation of the right to prose representation.
[9] It is worth repeating at this point that the trial court gave the defense an opportunity to "subpoena records" and present further evidence on this issue. However, no other evidence was ever adduced for the court's consideration.
[10] Captain Oppy was never called as a witness to clarify the extent of appellant's alleged mental illness.
[11] We also point out that appellant never explains how this information would have been useful. Instead, he points to jury questions to the trial court about appellant's alleged mental illness(es). Appellant argues in his brief that "[i]t is painfully obvious that the jury found [his] mental status `material . . . to guilt'[.]" We note that, to the extent he would have used this information to attempt to prove diminished capacity to commit these offenses, Ohio law does not recognize such a defense. See State v. McCray (1995), 103 Ohio App.3d 109,118, 658 N.E.2d 1076, 1082; State v. Wong (1994), 95 Ohio App.3d 39,57, 641 N.E.2d 1137, 1149; also see generally State v. Mitts (1998),81 Ohio St.3d 223, 227, 690 N.E.2d 522, 527.
[12] As the Supreme Court has noted, "[t]o discharge a court-appointed attorney, the defendant must show `a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." (Emphasis added.) (Citations omitted.)State v. Coleman (1988), 37 Ohio St.3d 286, 292, 525 N.E.2d 792,798.